# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| JENNIFER BURNS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RIVERSIDE NURSING AND ) <br> REHABILITATION CENTER, LLC, ) <br> RANDY WAYNE SPARKS, ) <br> ) <br> Defendants. ) | Case No. 5:25-cv-06142-RK |

## ORDER

Before the Court is Defendant Riverside Nursing and Rehabilitation Center, LLC's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Doc. 4.) The motion is fully briefed. After careful consideration and review, and for the reasons explained below, the Court **ORDERS** that the motion to dismiss is **GRANTED**, and all counts alleged against Defendant Riverside are **DISMISSED**.

## Background

Plaintiff Jennifer Burns is an adult female who was employed by Riverside Nursing and Rehabilitation Center, LLC ("Riverside") as a registered nurse in December 2024. (Doc. 1 at ¶ 7.) On December 7, 2024, Defendant Randy Wayne Sparks, Executive Director of Riverside, approached Plaintiff and "yelled at Plaintiff in a hostile manner, 'get a badge on right now.'" (*Id.* at ¶ 11.) Plaintiff was not wearing a badge, but she informed Defendant Sparks that she would write her credentials on a piece of tape and wear the tape. (*Id.* at ¶ 12.) Defendant Sparks told Plaintiff that she needed to either get a badge or go home. (*Id.* at ¶ 13.) Plaintiff asked Defendant Sparks whether the Human Resources Director was in the building, and Defendant Sparks said she was not. (*Id.* at ¶¶ 15-16.)

Plaintiff again asked Defendant Sparks if he wanted her to write her name on a piece of tape and Defendant Sparks, stepping closer to and "look[ing] down on Plaintiff," stated, "You get a name badge on right now or get out of my building[,] little girl!" (*Id.* at ¶ 18.) Plaintiff said, "Okay," and began walking toward the wound cart where she was previously working, but Defendant Sparks told her to "get out now" and leave in the opposite direction. (*Id.* at ¶ 20.) When

Plaintiff informed Defendant Sparks that she needed to put the cart away, Defendant Sparks said, "Oh, you are the nurse. Well go ahead and stay." (*Id.* at ¶¶ 21-22.) Plaintiff told Defendant Sparks that "she was offended by being referred [to] as a 'little girl'" and that "his mannerism and conduct at that time had created a hostile environment, making it impossible for her to stay and that she was going home." (*Id.* at ¶¶ 23-24.) When Plaintiff headed to the office to obtain her belongings, Defendant Sparks "rushed into the office before Plaintiff and began closing the door on Plaintiff's body," pushing the door against her three times which caused her "to scream in pain" before allowing her to enter the office. (*Id.* at ¶¶ 25-28.) Plaintiff left the building and called the police. (*Id.* at ¶ 29.) She "was transferred by ambulance to the hospital to receive treatment for the injuries sustained by the actions of Defendant Sparks." (*Id.* at ¶ 30.) Plaintiff was terminated from her employment at Riverside on December 14, 2024.

Plaintiff filed the current lawsuit against Defendant Riverside and Defendant Sparks on August 13, 2025, alleging four counts: (1) sexual harassment in violation of Title VII of the Civil Rights Act[1] (Count 1); (2) battery (Count 2); (3) retaliation (Count 3); (4) wrongful termination (Count 4); and (5) breach of implied contract (Count 5). Defendant Riverside moves to dismiss all counts against it for failure to state a claim.[2] (Doc. 4.)

**Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draws all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (internal quotation marks omitted). In doing so, however, the Court is not bound to accept as true "legal conclusions, unsupported conclusions,

---

[1] Plaintiff fails to specify under which statutory scheme she brings her sexual harassment claim, but in Plaintiff's jurisdictional statement she pleads that in addition to diversity of citizenship jurisdiction, "[t]here is also a federal question regarding Plaintiff's sexual harassment claim." (Doc. 1 at ¶ 5.) Plaintiff also cites to caselaw analyzing Title VII in her opposition to the motion to dismiss. Therefore, the Court generously construes Count 1 as alleging sexual harassment in violation of Title VII.

[2] Defendant Sparks was served on September 30, 2025, making his responsive pleading or motion due on October 21, 2025. Defendant Sparks has not appeared or responded to the Complaint.

unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). The Court assesses "plausibility considering only the complaint and materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Meardon v. Regiser*, 994 F.3d 927, 934 (8th Cir. 2021) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)).

## Analysis

I.  **Count 1 – Sexual Harassment**

In Count 1, Plaintiff alleges that Defendant Riverside is liable under Title VII for sexual harassment she experienced by Defendant Sparks when he called her a "little girl" and forcefully closed the office door against her body.[3] Plaintiff claims she was subject to disparate treatment and a hostile work environment.

To support her hostile work environment theory concerning the alleged actions by Defendant Sparks, her supervisor, Plaintiff must set forth facts from which the Court could reasonably infer each element of the prima facie case, including: "(1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *Hairston v. Wormuth*, 6 F.4th 834, 841, 841 n.2 (8th Cir. 2021). The fourth element involves "both objective and subjective components." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021) (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). "At the pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" *Id.* (quoting *Blomker*, 831 F.3d at 1056). "Eighth Circuit precedent sets a high bar for conduct to

---

[3] As discussed *infra*, the Court generously construes Count 1 as alleging a claim pursuant to Title VII. The Court also notes that it is unable to discern whether Plaintiff has exhausted her administrative remedies as required by Title VII. Defendant Riverside has not raised the issue of exhaustion.

Failure to plead that she has satisfied the exhaustion requirement may not automatically call for dismissal of Plaintiff's sexual harassment claim; however, if the Court was not already dismissing Count 1 for failure to state a claim under the reasons stated herein, the Court would alternatively explore whether Plaintiff had administratively exhausted her claim. *See Batchelder v. INS*, 180 Fed. App'x 614, 615 (8th Cir. 2006) (unpublished per curiam) (sua sponte dismissal of Title VII claims for failure to exhaust administrative remedies without providing the plaintiff with notice prior to the dismissal that he had to provide evidence of exhaustion was erroneous; modifying dismissal to be without prejudice).

3

be sufficiently severe or pervasive in order to trigger a Title VII violation. . . . [S]ome conduct well beyond the bounds of respectful and appropriate behavior is nonetheless insufficient to violate Title VII." *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020) (citing *McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013)).

Count 1 fails to set forth plausible facts showing both causation between Defendant Sparks' actions and Plaintiff's protected status as well as that his actions were sufficiently severe or pervasive. The only causal nexus between Defendant Sparks' slamming of the door and Plaintiff's sex that the Court can deduce from Plaintiff's Complaint is her speculative claim that this act was "an exercise of male dominance." (Doc. 1 at ¶ 37.) And, even coupled with calling Plaintiff a "little girl," the harassment as pled was not objectively severe or pervasive. The harassment occurred in a brief instance, it was not sexually vulgar—let alone even patently sexual. *See Paskert*, 950 F.3d at 538 ("one instance of unwelcome physical contact, one or two statements where [supervisor] stated he could "have [the plaintiff]," and several statements about how he never should have hired a female and wanted to make [her] cry" were not sufficiently severe or pervasive) (discussing facts of *Duncan v. General Motors Corporation*, 300 F.3d 928, 931-35 (8th Cir. 2002), where "a supervisor sexually propositioned [the employee], repeatedly touched her hand, requested that she draw an image of a phallic object to demonstrate her qualification for a position, displayed a poster portraying the plaintiff as the 'president and CEO of the Man Hater's Club of America,' and asked her to type a copy of a 'He-Men Women Hater's Club' manifesto" were not sufficiently severe or pervasive) (discussing circumstances of *LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098, 1100-03 (8th Cir. 2005), which included "graphic sexual propositions and even incidental unwelcome sexual contact" were not sufficiently severe or pervasive)); *McMiller*, 738 F.3d at 188 (supervisor's conduct including kissing the plaintiff on her face twice, placing or attempting to place his arms around her three times, and requesting that she remove an ingrown hair from his chin were not sufficiently severe or pervasive).

Next, to support her disparate treatment theory, Plaintiff must plead facts which allow the Court to reasonably infer, *inter alia*, circumstances that give rise to an inference of discrimination such that similarly situated employees outside the protected class were treated differently. *See Parker v. U.S. Dep't of Agric.*, 129 F.4th 1104, 1112 (8th Cir. 2025). To support her disparate-treatment claim, Plaintiff alleges only that Defendant Sparks "would have never" closed the office

4

door on the body of a male employee. Plaintiff's allegations are exceedingly vague and speculative and they do not attempt to allege that any male employee was similarly situated or in fact treated differently.

Accordingly, Count 1 fails to state a claim for sexual harassment under either theory. Count 1 is **DISMISSED**.

### II.  Count 2 – Common Law Battery

In Count 2, Plaintiff alleges a common law battery claim based upon Defendant Sparks "closing the door repeatedly against her body." (Doc. 1 ¶ 38.) However, the Missouri Workers' Compensation Law ("MWCL") bars Plaintiff's common law claim in its current state.

The MWCL holds employers liable for the accidental injury of employees. Mo. Rev. Stat. § 287.120.1. "The term 'accident' as used in [the MWCL] shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." *Id.* The MWCL contains an exclusivity provision which provides that the MWCL is the exclusive remedy available to an employee "whenever the injury is 'accidental' as that term is used within the statute." *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1212 (8th Cir. 1999) (citing *Jones v. Jay Truck Driver Training Ctr. Inc.*, 709 S.W.2d 114, 115 (Mo. banc 1986)). Moreover, "it is the exclusive jurisdiction of the Missouri Labor and Industrial Relations Commission to determine whether an employee's injuries were the product of an 'accident' for purposes of [MWCL] preemption." *Id.* (citing *Goodrum v. Asplundh Tree Expert Co.,* 824 S.W.2d 6, 8 (Mo. banc 1992); *Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 161 (Mo. banc 1991)); *see also Dong Van Nguyen v. Dobbs Int'l Servs., Inc.*, 94 F. Supp. 2d 1043, 1052 (W.D. Mo. 2000) (common law claims for assault and battery by supervisor barred by the MWCL); *Francis v. Compass Grp. USA, Inc.*, 572 F. Supp. 3d 706, 709-10 (E.D. Mo. 2021) (common law wrongful termination claims in Missouri were abolished with enactment of the exclusivity provisions in the MCWL, Missouri Human Rights Act ("MHRA"), and Missouri Whistleblower's Protection Act).

Because Plaintiff seeks to hold Defendant Riverside liable for battery arising from actions of her supervisor during her employment, her claim is barred by the MWCL to the extent that the Missouri Labor and Industrial Relations Commission has yet to find that her injury was non-accidental (and therefore not covered by the MWCL).

Accordingly, Count 2 is **DISMISSED**.

5

### III. Counts 3 and 4 – Retaliation and Wrongful Termination

Counts 3 and 4 rest on the same factual allegation—Plaintiff's termination from Riverside. Count 3 alleges that Defendant Riverside unjustly terminated Plaintiff after she asked to speak with a human resources representative and went home due to the alleged hostile environment alleged in Count 1. (Doc. 1 at ¶¶ 41-42.) In Count 4, Plaintiff again alleges that she was unjustly terminated after "fleeing from a hostile working environment." (*Id.* at ¶ 45.) Count 3, captioned "Retaliation," and Count 4, captioned "Wrongful Termination," however, lack citation to any statutory framework or other authority which could support either claim which occurred in the employment setting (i.e., the MHRA or Title VII). Construing the Complaint generously in Plaintiff's favor, it appears that Plaintiff brings an employment retaliation claim pursuant to either the MHRA or Title VII in Count 3 and a wrongful termination claim pursuant to Missouri common law in Count 4.

To the extent that Plaintiff attempts to plead a retaliation claim pursuant to the MHRA or Title VII, she has not plausibly pled the requisite elements under either statutory framework.[4] A Title VII retaliation claim requires Plaintiff establish: (1) she engaged in statutorily protected activity, which could include opposing discriminatory employment practices prohibited under Title VII; (2) she suffered an adverse employment action; and (3) the "engagement in a protected activity [was] the but-for cause of the adverse employment action." *Warren v. Kemp*, 79 F.4th 967, 973-74 (8th Cir. 2023). The MHRA generally requires the same, except that for purposes of the first element, Plaintiff must plead that she complained of or otherwise "opposed any practice prohibited by" the MHRA. *Li Lin v. Ellis*, 594 S.W.3d 238, 242 (Mo. banc 2020) (quoting Mo. Rev. Stat. § 213.070.1(2)). Plaintiff argues that her protected activity was the exercise of her "lawful right to leave what she determined to be an unsafe and hostile environment." (Doc. 7 at 12; Doc. 1 at ¶¶ 42-43 ("Defendant Sparks retaliated against Plaintiff for not wanting to work in a sexual hostile environment").) Plaintiff misstates the Title VII and MHRA inquiries into protected activity for purposes of the first element;[5] and she does not provide any case law supporting her

---

[4] As with Count 1, Plaintiff has also not provided any evidence or allegation of administrative exhaustion of these claims.

[5] Unsurprisingly so, given that Plaintiff's only authority in support of her opposition to the motion to dismiss on this point relied upon North Carolina caselaw analyzing the North Carolina employment discrimination statute.

position that leaving work constitutes protected activity under the MHRA or Title VII. Count 3 fails to state a claim for retaliation under the MHRA or Title VII.

Moreover, insofar as Plaintiff attempts to plead a common-law wrongful-termination claim in Count 4, her claim is preempted by the MHRA. *State ex rel. Church & Dwight Co. v. Collins*, 543 S.W.3d 22, 28 (Mo. banc 2018); Mo. Rev. Stat. § 213.070.2 (the MHRA "shall provide the exclusive remedy for any and all claims for injury or damages arising from the employment relationship"); *see also Francis*, 572 F. Supp. 3d at 710 (the "Missouri legislature abolished common law wrongful termination claims by providing that [the MHRA, the MWCL, and the Missouri Whistleblower's Protection Act] serve as the 'exclusive remedy for any and all claims of unlawful employment practices'").

For these reasons, Plaintiff's retaliation and/or wrongful termination allegations fail to state a claim under any conceivable theory. Accordingly, Counts 3 and 4 are **DISMISSED**.

IV. **Count 5 – Breach of Implied Contract**

In Count 5, Plaintiff alleges that Defendant Riverside's "employment policy [] constitutes an implied contract" which Defendant Riverside breached when it fired Plaintiff without following its termination procedures. (Doc. 1 ¶¶ 49-51.)

"In Missouri, an employee can be terminated at the will of his employer unless a valid employment contract—complete with 'offer, acceptance, and bargained for consideration'—states otherwise." *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1090-91 (8th Cir. 2014) (quoting *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988)). Therefore, lacking the prerequisites of any traditional contract, employee policies or handbooks are generally not considered enforceable employment contracts which alter an employee's at-will status. *Id.* ("the simple existence of" an internal policy which referred to employees as "permanent," implemented progressive discipline procedures and an expected minimum level of disciplinary review, and indicate[d] termination should only be for cause," "does not imply an enforceable employment contract" (citing *Greeno v. Little Blue Valley Sewer Dist.*, 995 F.2d 861, 864 (8th Cir. 1993); *Johnson*, 745 S.W.2d at 662 (employee "handbook amounts to nothing more than 'an informational statement of' the employer's 'self-imposed policies'"))).

The Complaint does not set forth any facts which plausibly show that Plaintiff entered into a contract with Riverside; rather, Plaintiff sets forth a wholly unsupported legal conclusion that Defendant Riverside "has an employment policy that constitutes an implied contract." (Doc. 1 at

7

¶ 49.) Even if the policy had created an implied contract which altered Plaintiff's at-will employment status, Plaintiff fails to allege what termination procedures were violated and how Defendant Riverside failed to adhere to them. Accordingly, Plaintiff fails to state a claim for breach of implied contract and Count 5 is **DISMISSED**.

## Conclusion

Therefore, after careful consideration and review, and for the reasons explained above, this Court **ORDERS** that Defendant Riverside's motion to dismiss, (Doc. 29), is **GRANTED**, and the Complaint as to Defendant Riverside is **DISMISSED**. The Complaint is dismissed **without prejudice** with the exception of Count 4, which is dismissed **with prejudice**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 3, 2026